FILED

2023 May-25  PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SARA A. SHABAZZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22-cv-01500-NAD |
| | ) | |
| EMBASSY SUITES | ) | |
| MANAGEMENT, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO REMAND

For the reasons stated below and on the record in the April 19, 2023 motion hearing, the court **GRANTS** Plaintiff Sara A. Shabazz's "Motion To Remand" (Doc. 11), and **REMANDS** this case to the Circuit Court for Jefferson County, Alabama. The court will enter a separate remand order.

### INTRODUCTION

Plaintiff Shabazz, acting as parent and next friend of deceased minor Jamir Shabazz Hawkins, filed a complaint in Alabama state court against Defendants Embassy Suites Management, LLC, Embassy Suites Employer, LLC, Hilton Inns, LLC (collectively, the "Removing Defendants"), Jose M. Pereira, and various fictitious defendants. Doc. 1-1 at 2–3. In the complaint, Shabazz alleges claims for negligence and wrongful death based on Hawkins's drowning death during a

party at the swimming pool at an Embassy Suites hotel in Birmingham, Alabama. Doc. 1-1 at 3–9.

The Removing Defendants removed the case to this court based on diversity jurisdiction, asserting that Shabazz had fraudulently joined Defendant Pereira—the manager of the hotel and an Alabama citizen.   Doc. 1.   Shabazz then filed this motion to remand.   Doc. 11.

Based on the controlling Eleventh Circuit law, the allegations in the complaint, and the record evidence, and because the court must resolve any uncertainty about Alabama state substantive law in Shabazz's favor, the Removing Defendants have not shown that there is no possibility that Shabazz can establish a claim against Pereira.   As a result, the Removing Defendants have not shown that Shabazz fraudulently joined Pereira as a Defendant in this action.   Thus, the court does not have subject matter jurisdiction over this case, and must remand the case back to state court.

## PROCEDURAL BACKGROUND

On October 26, 2022, Plaintiff Shabazz filed her complaint in the Jefferson County Circuit Court.   Doc. 1-1 at 2–3.   On November 28, 2022, the Removing Defendants removed the case based on diversity jurisdiction.   Doc. 1.   The parties consented to magistrate judge jurisdiction.   Doc. 15; 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73.

The notice of removal alleges that the amount in controversy exceeds $75,000, and that Shabazz, who is an Alabama citizen, is completely diverse from the Removing Defendants, all of which are citizens of Delaware and Virginia.   Doc. 1 at 3–7.

The notice of removal also alleges that Defendant Pereira, the hotel manager, is a citizen of Alabama (like Shabazz); but the Removing Defendants argue that Shabazz fraudulently joined Pereira as a Defendant in this action, and consequently that the court should disregard Pereira's citizenship for purposes of diversity jurisdiction.   Doc. 1 at 7–15.   Along with the notice of removal, the Removing Defendants filed an affidavit from Pereira.   Doc. 1-4.

After removal, Pereira filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   Doc. 5.   In his motion to dismiss, Pereira argues that Shabazz fraudulently joined him as a Defendant, that Shabazz cannot state a claim against him, and that Shabazz's allegations "impermissibly conflate or lump together all of the Defendants."   Doc. 5 at 3–6.

On December 20, 2022, Shabazz filed this motion to remand.   Doc. 11. Along with her motion, Shabazz filed copies of the Alabama State Board of Health regulation governing the construction, maintenance, and operation of hotels (which includes a provision for hotel swimming pools), and of the Jefferson County Department of Health regulations governing the design, construction, and operation

of public swimming pools (including pools for hotels).   Doc. 11-2; Doc. 11-3.

The Removing Defendants filed a response in opposition to the motion to remand (Doc. 17), and Shabazz filed a reply (Doc. 19).   Along with the reply, Shabazz filed a copy of a press release announcing Pereira's appointment as the "General Manager" of the hotel.   Doc. 19-1 at 29.

On April 19, 2023, the court held a hearing on the motion to remand.   *See* Minute Entry (Entered: April 19, 2023).

## LEGAL STANDARD

### A.   Federal jurisdiction (diversity), and removal

Federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress."   *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996); *accord Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them").

In that regard, "[f]ederal courts are courts of limited jurisdiction."   *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).   Generally speaking, federal subject matter jurisdiction over a civil case requires either a question "arising under the Constitution, laws, or treaties of the United States" (28 U.S.C. § 1331), or complete diversity of citizenship (28 U.S.C. § 1332).

With respect to diversity, a federal court has jurisdiction where the matter "is

between . . . citizens of different States," and where the amount "in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."   28 U.S.C. § 1332(a)(1).

In addition, a defendant generally can remove from state court to federal court "any civil action brought" in state court over which the "district courts of the United States have original jurisdiction."   28 U.S.C. § 1441(a).

"[T]he burden of establishing removal jurisdiction rests with the defendant seeking removal."   *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013). In this respect, the "removal statutes are construed narrowly"; and, "where [the] plaintiff and [the] defendant clash about jurisdiction, uncertainties are resolved in favor of remand."   *Burns*, 31 F.3d at 1095.

If "at any time" after a defendant has removed a case to federal court but "before final judgment," it "appears that the district court lacks subject matter jurisdiction," then "the case shall be remanded."   28 U.S.C. § 1447(c).

Moreover, the plaintiff is "the master of the complaint," and is "free to avoid federal jurisdiction" by "structuring his case to fall short of a requirement of federal jurisdiction," so long as "the method of avoidance is not fraudulent."   *Scimone*, 720 F.3d at 882 (citation and quotation marks omitted).

### B.   Diversity jurisdiction, and fraudulent joinder

While removal based on diversity jurisdiction typically requires complete

diversity of citizenship (*see* 28 U.S.C. § 1332), an action "may nevertheless be removable," if the plaintiff fraudulently joins any nondiverse defendants.   *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).   In this regard, a plaintiff fraudulently joins a nondiverse defendant "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant."   *Id.*

So, "[i]n a removal case alleging fraudulent joinder," the removing defendant "has the burden of proving that . . . there is no possibility the plaintiff can establish a cause of action against the [nondiverse] resident defendant."   *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998) (citation omitted); *accord Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("If there is even a possibility that a state court would find that the complaint states a cause of action against [the] resident defendant[], the federal court must find that joinder was proper and remand the case to state court." (quotation marks omitted)).

With respect to the removing defendant's burden to show fraudulent joinder, the Eleventh Circuit has mandated that the defendant "must make such a showing by clear and convincing evidence."   *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The Eleventh Circuit also has instructed that a defendant's burden to establish fraudulent joinder is "a heavy one," such that if the "plaintiff states even a colorable

claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Crowe*, 113 F.3d at 1538 (quotation marks omitted); *accord Pacheco de Perez*, 139 F.3d at 1380–81 ("In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.'" (quoting *Crowe*, 113 F.3d at 1538)).

"The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. However, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005) (citation omitted).

In resolving a fraudulent joinder issue on a motion to remand, a court's analysis "must be limited to determining whether [p]laintiffs have even an arguable claim," and "any ambiguity or doubt about the substantive state law favors remand to state court." *Crowe*, 113 F.3d at 1539. For a court resolving a motion to remand "to interpose its judgment" on a "sufficiently substantial question" of state law "would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Henderson*, 454 F.3d at 1284; *accord Crowe*, 113 F.3d at 1538 (the court "must resolve any uncertainties about state substantive law in favor of the plaintiff").

Furthermore, in "determin[ing] whether the case should be remanded," the

court "must evaluate the factual allegations in the light most favorable to the plaintiff." *Crowe*, 113 F.3d at 1538. The "proceeding appropriate 'for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b).'" *Legg*, 428 F.3d at 1322–23 (quoting *Crowe*, 113 F.3d at 1538). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id.* at 1323 (quoting *Pacheco de Perez*, 139 F.3d at 1380) (emphasis omitted).

The court also "must resolve all questions of fact . . . in favor of the plaintiff." *Legg*, 428 F.3d at 1323 (citation and quotation marks omitted). But, there "must be some question of fact before the district court can resolve that fact in the plaintiff's favor"; and, where the defendants' evidence is "undisputed by the [p]laintiffs, the court cannot then resolve the facts in the [p]laintiffs' favor based solely on the unsupported allegations in the [p]laintiffs' complaint." *Id.*

## FACTUAL BACKGROUND

For purposes of this motion (and based on the controlling Eleventh Circuit law, *see, e.g.*, *Crowe*, 113 F.3d at 1538), the court must accept as true the following allegations in Plaintiff Shabazz's complaint:

- On or about October 15, 2022, five-year-old Jamir Shabazz Hawkins was a guest at a party at the hotel's swimming pool. Doc. 1-1 at 5.

8

- At the party, the "swimming pool and/or swimming pool area" was "in an unreasonably dangerous condition" because of the "unsafe and cloudy condition of the swimming pool water," "the lack of proper lifesaving equipment, including a 'Rope and Float Line' separating the deep and shallow ends," and "the failure to warn and prevent access to any dangerous conditions." Doc. 1-1 at 5.

- Hawkins entered the swimming pool with other children to swim and drowned because of the unreasonably dangerous conditions of the pool and/or pool area. Doc. 1-1 at 5.

- Defendants, including Pereira, breached a duty to the "public and specifically to [Hawkins] to use reasonable care to maintain the hotel premises and pool in a reasonably safe condition," including to maintain "the condition and quality of the pool water," to "provide and maintain proper lifesaving equipment, including a 'Rope and Float line' separating the deep and shallow ends," and to "warn of any dangers of which [Defendants] knew or should have known." Doc. 1-1 at 6–8.

- Defendants, including Pereira, "failed to maintain the hotel premises and pool in a safe condition, including but not limited to the cloudy, dangerous and unsafe quality of the pool water," "failed to provide and maintain proper lifesaving equipment, including a 'Rope and Float Line' separating the deep and shallow ends," and "failed to warn and prevent access to any dangerous conditions." Doc. 1-1 at 6–8.

In addition, for purposes of this motion, and based on the undisputed record evidence (and the controlling Eleventh Circuit law, *see, e.g.*, *Legg*, 428 F.3d at 1323), the court must accept as true the following facts:

- Defendant Pereira is the "General Manager" of the hotel, and was at the time of the drowning. Doc. 1-4 ¶ 1.

- The press release announcing Pereira's appointment as General Manger of the hotel states that Pereira would "lead the team of the 242-two room suites of the hotel," and that the "hotel offers . . . a heated indoor swimming pool." Doc. 19-1 at 29.

- The "management structure of the Hotel includes 8 managers who oversee approximately 50 people employed and 7 departments."   Doc. 1-4 ¶ 2.

- Pereira "was not working on the date of the subject accident," so he "was not present at the Hotel at any point on October 15, 2022, prior to the subject accident."   Doc. 1-4 ¶ 4.

- Because Pereira "was not present at the Hotel before or at the time of the subject accident," he "did not have an opportunity to personally observe the pool conditions on that date," and "did not have any personal interaction with [Hawkins], [Shabazz], or anyone else who accompanied him prior to or at the time of the subject accident."   Doc. 1-4 ¶ 5.

- Pereira "made no representations and issued no warranties relative to the pool to [Hawkins], [Shabazz], or anyone else who accompanied him prior to or at the time of the subject accident."   Doc. 1-4 ¶ 6.

- As "General Manager," Pereira "did not personally maintain the pool, which was delegated to other personnel," and "was not personally involved in the day-to-day operations of the pool."   Doc. 1-4 ¶ 7.

- As "General Manager," Pereira "did not personally oversee outside pool contractors or onsite maintenance personnel who maintained the pool, including cleaning and chemical testing," and "was not the point of contact for outside pool contractors and did not receive routine reports about the operation of the pool prior to this subject accident."   Doc. 1-4 ¶ 8.

- Pereira "[is] unaware of any dangers or unsafe conditions associated with the use of the pool beyond the risks normally associated with using a pool," and "[is] unaware of any dangerous or unsafe qualities of the pool that allegedly existed at the time of the subject accident."   Doc. 1-4 ¶¶ 9, 10.

- "The pool was designed and constructed prior to [Pereira's] employment at the Hotel," and he "ha[s] not personally been involved in making any alterations to the pool."   Doc. 1-4 ¶ 11.

- "At all times, the pool has maintained signage advising no lifeguard is on duty, children under the age of 14 should not use the pool without an adult in attendance, and hotel guests that they use the pool at their own risk."   Doc. 1-4 ¶ 12.

- Since Pereira "ha[s] been employed at the Hotel, there have been no prior instances of people being hurt or killed in or around the pool area."   Doc. 1-4 ¶ 13.

## DISCUSSION

The only question on this motion to remand is whether—based on the allegations in the complaint and the undisputed record evidence—the Removing Defendants have carried their "burden of proving" that there is "no possibility" that Plaintiff Shabazz "can establish a cause of action against" Defendant Pereira—i.e., "the [nondiverse] resident defendant."   *Pacheco de Perez*, 139 F.3d at 1380. Because the Eleventh Circuit requires on this motion that the court "must resolve any uncertainties" about Alabama "state substantive law in favor of" Shabazz (*Crowe*, 113 F.3d at 1538), the Removing Defendants have not carried that burden. *See Pacheco de Perez*, 139 F.3d at 1380; *accord Crowe*, 113 F.3d at 1539 ("[A]ny ambiguity or doubt about the substantive state law favors remand to state court.").

As noted above, Shabazz alleges claims for negligence and wrongful death against all Defendants, including Pereira.   Doc. 1-1 at 3–9.   The Removing Defendants assert that Shabazz "cannot possibly recover on the state law claims against" Pereira.   Doc. 1 at 9; *see* Doc. 17 at 5 (similar).

The Removing Defendants argue that the complaint "fails to state any allegations that plausibly allege Pereira, individually, *[1]* had or *[2]* breached a duty

that 'helped bring about' the death of [Shabazz]'s minor son."[1]   In particular, the Removing Defendants argue that Pereira "owed no duty to [Shabazz] or her son [Hawkins] under Alabama law" (Doc. 17 at 10),[2] and that Shabazz "cannot plead any facts to establish that [Pereira] personally participated in a tort related to the subject accident" (Doc. 1 at 11).[3]

But Alabama state law on both of these issues—i.e., Pereira's alleged duty, and Pereira's alleged breach or "personal participation" in the alleged negligence—is uncertain.   And, in considering remand, the court must resolve those uncertainties in Shabazz's favor.   *See Pacheco de Perez*, 139 F.3d at 1380; *Crowe*, 113 F.3d at 1539.

*1. Duty.*   With respect to Pereira's alleged duty, neither party has identified any controlling Alabama state caselaw on a hotel general manager's legal duty to guests.   *See, e.g.*, *Fletcher v. Hale*, 548 So. 2d 135, 138 (Ala. 1989) ("Duty is . . . a

---

[1] Doc. 17 at 8–9 (quoting *Atwood v. Weyerhaeuser USA, Inc.*, 2010 WL 749337, at *9 (S.D. Ala. Feb. 26, 2010) ("[I]n order to find an employee of a corporation personally liable for the negligent acts of the corporation there must have been upon his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act." (quotation marks omitted))).

[2] *See also* Doc. 1 at 12 ("Alabama law would not stretch to impose a duty on Pereira to owe a duty, in his personal capacity, to warn Plaintiff or her decedent of conditions at the pool when he was not even present when they were on the premises based on the mere fact that he was employed at the hotel.").

[3] *See also* Doc. 17 at 8 ("[T]here must be some personal participation in the alleged tortious misconduct to hold the employee personally liable." (collecting cases)).

matter of law." (citing cases)) (duty of apartment complex owner and maintenance supervisor).   Nor has the court identified any such authority.

While the Removing Defendants argue that Pereira "had no duty to maintain a safe premises," Alabama state law "does not establish such a clear rule of law," and the Removing Defendants "cite no law or rule which provides that legal clarity." *See Fuchsberger v. Love's Travel Stops & Country Stores, Inc.*, 2016 WL 6804896, at *4 (M.D. Ala. Nov. 16, 2016) (duty of store manager).

The Removing Defendants argue that "premises liability law is rooted in the duty owed by the owner or possessor to those present on its premises," and that "Alabama premises liability law addresses the duty owed by premises owners or possessors, not their employees."   Doc. 17 at 10, 13; *see also Mooney v. Logan's Roadhouse, Inc.*, 2006 WL 8436734, at *2 (N.D. Ala. June 8, 2006) ("It is the *owner* of a premises who owes a duty to invitees." (citation omitted)); *Prince v. Wal-Mart Stores, Inc.*, 804 So. 2d 1102, 1104 (Ala. Civ. App. 2001) ("The duty a premises owner owes to an invitee is well established.").

But the law is not so one-sided.   For instance, in the context of the fraudulent joinder analysis, several Alabama federal courts have concluded that Alabama state law is uncertain on the question whether a *store* manager has a legal duty in an alleged premises liability case.[4]   While Pereira is not a store manager, his position

---

[4]   *See, e.g.*, *Kimbrough v. Dial*, 2006 WL 3627102, at *3 (S.D. Ala. Dec. 8, 2006)

as the hotel general manger is arguably analogous, and there appears to be even less caselaw—and arguably even more uncertainty—regarding a hotel manager's legal duty in an alleged premises liability case. *See Thetford v. City of Clanton*, 605 So. 2d 835, 841–42 (Ala. 1992) (reversing grant of summary judgment in favor of hotel defendants, where a hotel manager sawed through a locked door chain to gain entry to a guest's room, which led to the guest's death).

Moreover, Shabazz argues that, with respect to a hotel swimming pool, certain statutory and regulatory provisions impose a legal duty on a hotel general manager such as Pereira. *See, e.g.*, Doc. 11 at 7–11; Doc. 11-2; Doc. 11-3.[5]   The Removing

---

(granting motion to remand, and reasoning that the "defendants do not cite a single authority for the proposition that a store manager owes no duty to business invitees that might give rise to a viable cause of action for negligence or wantonness in these circumstances"); *Fuchsberger*, 2016 WL 6804896, at *4 (granting motion to remand, and reasoning that "the Court is unable to conclude that no Alabama court would find this complaint sufficient against [the defendant store manager]"); *Parker v. Lowe's Home Ctrs.*, 2013 WL 12404904 (M.D. Ala. Oct. 29, 2013) (granting motion to remand) (similar).

[5] For example, Shabazz cites Ala. Code § 34-15-4(a), which states that "[e]very owner, *manager*, or operator" of a "hotel shall maintain the physical and sanitary condition of the structure, its equipment, water supply, and human waste disposal and shall conduct the operations thereof in such manner as to render services and accommodations to travelers in compliance with rules and regulations governing hotels and hotel operation adopted by the State Board of Health." Ala. Code § 34-15-4(a) (emphasis added).   Among other things, the State Board of Health regulation requires that a "[h]otel swimming pool[] shall be constructed, operated, and maintained in accordance with the following minimum requirements," as well as any local county rules or regulations:   "[s]atisfactory means of disinfecting which provides a residual of disinfecting agent in the swimming pool[] water shall be used," and "[e]very hotel shall have life saving equipment readily accessible to the swimming pool." Ala. Admin. Code r. 420-3-11-.16(5)(a).   Furthermore, the

Defendants are correct that Shabazz "cites no case law stating that statute imposes liability on individual managerial employees for any potential liability of the hotel." Doc. 17 at 7.

But the Removing Defendants have not cited any case that would suggest Shabazz is misconstruing the statute or the applicable regulatory framework, and it is the Removing Defendants' burden to establish fraudulent joinder.  *See, e.g.*, *Pacheco de Perez*, 139 F.3d at 1380.   Plus, the court interprets a statute according to its plain language (*see, e.g.*, *Fuerst v. Housing Auth. of City of Atlanta, Ga.*, 38 F.4th 860, 869 (11th Cir. 2022)), and the plain language of the statute does govern how "[e]very . . . manager . . . of a hotel shall maintain" the premises (Ala. Code § 34-15-4(a)).   The statutory and regulatory framework "at least raise[s] a reasonable possibility that Alabama courts would impose a duty of care" on Pereira based on the allegations in Shabazz's complaint.   *See Kimbrough v. Dial*, 2006 WL 3627102, at *3 (S.D. Ala. Dec. 8, 2006) (duty of store manager).

---

Jefferson County Department of Health regulations require, among other things, that in a hotel swimming pool "[a] lifeline marked with visible floats at intervals not greater than six (6) feet shall be provided two (2) feet toward the shallow portion from the break in grade provided that the lifeline is not placed at a depth exceeding five (5) feet."   Doc. 11-3 at 29 § 3.3.5; *see* Doc. 11-3 at 8 § 1.7.41 (defining "lifeline" as "[a] rope line across a pool to designate a change in slope in the pool bottom, or the beginning of deep water and usually supported by regularly spaced floats"); Doc. 11-3 at 9–10 § 1.7.59 (defining "public swimming pool" as including a pool for a "hotel[]"); *see also* Doc. 11-3 at 15–16 § 1.11.6 (regulations regarding water quality standards, including "turbidity").

In sum, given the under-developed caselaw on a manager's duty in a premises liability case, and the arguable applicability of the statutory and regulatory framework that Shabazz has identified, "[i]t is not certain that Alabama state courts would" impose a legal duty on Pereira in this case.  *See Kimbrough*, 2006 WL 3627102, at *4.  "Perhaps [they] would . . . . Perhaps they would not."  *Id.* at *3; *see also Mooney*, 2006 WL 8436734, at *2 (reviewing caselaw from Florida, Mississippi, Louisiana, and Georgia, and reasoning that "[j]urisdictions which have had to confront the issue have held that an employee or manager does *not* personally owe a duty to invitees on his employer's premises"); *Calvert v. XTRA Lease, LLC*, 2018 WL 6725328, at *5 (N.D. Ala. Dec. 21, 2018) ("The Court has found no Alabama authority for the proposition that an employee of a premises owner owes a general duty to an employee of an independent contractor.").

The point on this motion to remand is that the answer to the duty question is uncertain, and the court must resolve that uncertainty in favor of Shabazz.  *See Pacheco de Perez*, 139 F.3d at 1380; *Crowe*, 113 F.3d at 1539.

        *2. Breach (personal participation).*    Again, with respect to Pereira's alleged breach, or "personal participation" in the alleged negligence, neither party has identified any controlling Alabama state caselaw.  Nor has the court.  Everyone does agree that "[t]o hold an employee of a corporation personally liable for the negligent acts of the corporation" under Alabama law, "'there must have been upon

his part such a breach of duty as contributed to, or helped bring about, the injury; that is to say, he must be a participant in the wrongful act.'"  *Legg*, 428 F.3d 1324 (quoting *Crigler v. Salac*, 438 So. 2d 1375, 1380 (Ala. 1983)).

In this regard (and as noted above), the Removing Defendants have introduced undisputed evidence demonstrating that Pereira had virtually no direct involvement with the hotel's pool or the relevant incident.   Among other things, Pereira "was not working on the date of the subject accident" and "was not present at the Hotel at any point on October 15, 2022, prior to the subject accident" (Doc. 1-4 ¶ 4), "did not have any personal interaction with [Hawkins], [Shabazz], or anyone else who accompanied him prior to or at the time of the subject accident" (Doc. 1-4 ¶ 5), "did not personally maintain the pool" and "was not personally involved in the day-to-day operations of the pool" (Doc. 1-4 ¶ 7), and "did not personally oversee outside pool contractors or onsite maintenance personnel who maintained the pool" (Doc. 1-4 ¶ 8).

But the parties disagree about "how Alabama law defines personal participation" in the context of this case.  *See Parker v. Lowe's Home Ctrs.*, 2013 WL 12404904, at *3 (M.D. Ala. Oct. 29, 2013) (personal participation of store manager).  And (again), "any ambiguity or doubt about the substantive state law favors remand to state court."  *Crowe*, 113 F.3d at 1539.

While the Removing Defendants argue that Shabazz's "claims against Pereira

appear to be based solely on his position as the Hotel's general manager" (Doc. 17 at 6),[6] the allegations in the complaint "do not hinge liability solely on a title, but rather on what [Pereira] did and failed to do to contribute" to the drowning.   *See Parker*, 2013 WL 12404904, at *4.

It is undisputed that Pereira is the "General Manager" of the hotel (Doc. 1-4 ¶ 1), who "lead[s] the team" at the hotel (Doc. 19-1 at 29).   As discussed above (*see supra*), Shabazz's complaint alleges that Pereira owed a duty—e.g., to "use reasonable care to maintain the hotel premises and pool in a reasonably safe condition"—and that Pereira breached that duty.   Doc. 1-1 at 6–8.   Shabazz alleges further that, consistent with his alleged duty, Pereira "failed to maintain the hotel premises and pool in a safe condition, including but not limited to the cloudy, dangerous and unsafe quality of the pool water," "failed to provide and maintain proper lifesaving equipment, including a 'Rope and Float Line' separating the deep and shallow ends," and "failed to warn and prevent access to any dangerous conditions."   Doc. 1-1 at 6–8.

For purposes of this motion, the Removing Defendants have established that

---

[6] The court agrees with the Removing Defendants that, were Shabazz hypothetically to have named as a defendant any "assistant food and beverage manager" or "assistant housekeeping manager" (Doc. 17 at 7), Shabazz could not state "a colorable claim" against that defendant.   *See Crowe*, 113 F.3d at 1538.   But, on this motion, it is undisputed that Pereira is the "General Manager" of the hotel (Doc. 1-4 ¶ 1), who "lead[s] the team" (Doc. 19-1 at 29).

Pereira "delegated to other personnel" the maintenance of the hotel pool.   Doc. 1-4 ¶ 7.   But (among other things), Pereira's affidavit "does not deny that he had supervisory responsibilities" over the hotel pool.   *See Parker*, 2013 WL 12404904, at \*4 (reasoning that the defendant store manager's affidavit did not foreclose arguable personal participation); *see also Fuchsberger*, 2016 WL 6804896, at \*4 (defendant store manager's affidavit did not foreclose arguable personal participation, even though the defendant averred that he had "'no control or responsibility over'" the relevant aspects of the premises).

Furthermore, even if Pereira "was not working" and "was not present" on the date of the relevant incident (Doc. 1-4 ¶ 4), the Removing Defendants have identified no authority for the proposition that, "under Alabama law, 'personal participation' requires the 'physical presence' of an on-duty manager."   *Parker*, 2013 WL 12404904, at \*4.

As a result, the Removing Defendants have "failed to show" that Shabazz "cannot state an arguable cause of action" against Pereira.   *See Pacheco de Perez*, 139 F.3d at 1380–81.   Stated otherwise, the Removing Defendants have not shown that "[t]he potential for legal liability" is "merely theoretical," as opposed to "reasonable."   *Legg*, 428 F.3d at 1325 n.5 (citation and quotation marks omitted).

In the end, Pereira may prevail in state court in defending any claim in this

19

litigation, either as a matter of law or as a matter of fact.[7]   But, "for the joinder to be legitimate," Shabazz "need not have a winning case" against Pereira.   *See Triggs*, 154 F.3d at 1287.   For now, the Eleventh Circuit's repeated instructions require that this court remand the case and *not* get out in front of the Alabama courts on these unsettled issues of state law.   *See, e.g.*, *Henderson*, 454 F.3d at 1284; *Pacheco de Perez*, 139 F.3d at 1380; *Crowe*, 113 F.3d at 1539.

## CONCLUSION

For the reasons stated above, Plaintiff Shabazz's "Motion To Remand" (Doc. 11) is **GRANTED**.   The court **DIRECTS** the Clerk of Court to **REMAND** this case to the Circuit Court for Jefferson County, Alabama.   Separately, the court will enter a remand order.

In addition, given the uncertainties under Alabama state law explained above, the court **DENIES** Shabazz's requests for attorney fees.   *See* Doc. 11 at 23–25; *see also* 28 U.S.C. 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."); *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking

---

[7] For the reasons discussed above in text, the court will not reach Pereira's pending motion to dismiss (Doc. 5).

removal"; and, "when an objectively reasonable basis exists, fees should be denied").

      **DONE** and **ORDERED** this May 25, 2023.

                    _____

                    **NICHOLAS A. DANELLA**
                    UNITED STATES MAGISTRATE JUDGE